# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| MELISSA BRACKETT, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 2:10-cv-24-DBH |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found the plaintiff, who alleges that she is disabled by bipolar disorder II, post traumatic stress disorder ("PTSD"), and thoracic disc herniation with pain, capable of returning to past relevant work as a data entry operator. I recommend that the decision of the commissioner be vacated and the case remanded for further development.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520, 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of a history of polysubstance abuse (in remission and not material) and thoracic disc herniation with pain, Finding 3, Record at 9; that she retained the

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on December 17, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), was able to lift/carry 10 pounds frequently and 20 pounds occasionally, could sit for six hours, stand for six hours, and walk for six hours in an eight-hour workday, and had postural restrictions that limited her to occasional climbing, stooping, kneeling, crouching, and crawling, with no climbing of ladders, ropes, or scaffolds, Finding 5, *id*. at 10; that she was capable of performing past relevant work as a data entry operator, which did not require the performance of work-related activities precluded by her RFC, Finding 6, *id*. at 12; and that she, therefore, was not disabled from January 15, 2002 (her alleged date of onset of disability), through the date of decision, August 27, 2009, Finding 7, *id*. at 13.[2] The Decision Review Board failed to review the decision within 90 days, making it the final determination of the commissioner, *id*. at 1-3; 20 C.F.R. § 405.450(b); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(f), 416.920(f)); *Bowen v. Yuckert*, 482

---

[2] The plaintiff was insured for purposes of SSD benefits through June 30, 2005. *See* Finding 1, Record at 9. Entitlement to SSI benefits does not depend on insured status. *See, e.g., Splude v. Apfel*, 165 F.3d 85, 87 (1st Cir. 1999).

U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(f), 416.920(f)); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

The plaintiff's statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

The plaintiff seeks reversal and remand on the basis of any of three asserted errors, arguing that the administrative law judge failed to (i) adequately assess her mental impairments at Step 2, (ii) take into account, in assessing the severity of her mental impairments, the existence of episodes of decompensation, and (iii) consider the opinion of Disability Determination Services ("DDS") nonexamining consultant Antonio Y. Medina, M.D., that she was limited to frequent, rather than continuous, fingering, a restriction incompatible with the performance of the data entry operator job. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors")

3

(Docket No. 10) at 3-11. I agree, and recommend that the court find, that on these bases reversal and remand are warranted.

### A. Mental Impairments

### 1. Background

The record indicates that the plaintiff, born in 1980, has had mental health difficulties of long standing, having been hospitalized the summer before she entered high school for attempted suicide, *see* Record at 296, and having demonstrated inappropriate behavior, including disrespectful and rude outbursts, during her high school years in an alternative high school in Windham, Maine, and in a Michigan high school in which she was enrolled while living temporarily with an aunt and uncle, *see, e.g., id*. at 254-55, 334. Her mental health difficulties continued into adulthood. She continued to report, and seek treatment for, symptoms such as labile moods, depression, and difficulty controlling anger, with treatment typically taking the form of medication management in view of a stated aversion to therapy. *See, e.g., id*. at 859, 898-902.

On March 20, 2007, a DDS nonexamining consultant, Scott W. Hoch, Ph.D., assessed the plaintiff as having a non-severe mental impairment of mild depression (not otherwise specified), *see id*. at 1083, imposing only mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation, each of extended duration, *see id*. at 1090; *see also, e.g*., 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is non-severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities[.]").

On May 25, 2007, subsequent to Dr. Hoch's evaluation, the plaintiff sought help from a licensed counselor, Theresa Cain Anderson, LCPC, in working on her parenting skills and becoming more relaxed in her daily life. *See* Record at 1097. She reported suffering panic attacks in social situations. *See id*. After taking the plaintiff's history and performing a mental status examination, Anderson concluded that she could benefit from a psychiatric evaluation and ongoing therapy to address her difficulties with anxiety and parenting. *See id*. at 1105. She assessed her with a Global Assessment of Functioning, or GAF, score of 70 both currently and in the prior year. *See id*. A GAF score of 61 to 70 reflects "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., text rev. 2000) ("DSM-IV-TR") (boldface omitted).[3]

With the benefit of Anderson's notes, S. Hadi, M.D., a board certified psychiatrist and DDS nonexamining consultant, assessed the plaintiff in March 2008 as having only mild limitations in the first three rated areas of functioning and one or two episodes of decompensation. *See* Record at 1114. He stated that the plaintiff "presented with Generalized anxiety disorder, Personality disorder NOS [not otherwise specified] none severe. History of Polysubstance dependence in partial remission. [L]imited evidence to support Bipolar, depression or OCD [obsessive-compulsive disorder] diagnosis." *Id*.

On May 2, 2008, subsequent to Dr. Hadi's evaluation, the plaintiff sought treatment from

---

[3] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." DSM-IV-TR at 32. The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id*. The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id*. at 34.

Beata Zarankow, M.D., complaining that she had been feeling anxious and depressed all the time. *See id*. at 1174. With the benefit of a detailed assessment of the plaintiff's current illness and past history and a mental status examination, Dr. Zarankow diagnosed her as suffering from bipolar disorder II and PTSD, with borderline personality traits by history. *See id*. at 1176.[4] She assigned her a current GAF score of 48. *See id*. A GAF score of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV-TR at 34 (boldface omitted).

Dr. Zarankow tried the plaintiff on Seroquel but discontinued that medication on May 30, 2008, due to excessive sedation. *See* Record at 1172. Dr. Zarankow switched the plaintiff to Risperdal, noting that a follow-up was due in four weeks. *See id*. at 1173. There is no indication of record of further visits to Dr. Zarankow. On April 22, 2009, the plaintiff was evaluated by Theresa A. Simpson, LCSW, for purposes of beginning a course of individual counseling. *See id*. at 1178, 1191. Simpson stated:

> 28 year old female presenting with sx [symptoms] consistent with major depression. [H]er main concern at this time is her intensely short fuse and her explosions when she is angry. She often is unable to be out in public because her tolerance of other people is so low that she is fearful of exploding. She is currently 21 weeks pregnant and is not on any medication. She reports having been dx [diagnosed] with bi-polar and PTSD in the past. [S]he indicates that she has multiple personality disorder.

*Id*. at 1178. Simpson set goals for the plaintiff of learning and practicing coping skills and acknowledging her past trauma in a way that allowed freedom from her current symptoms. *See*

---

[4] The plaintiff told Dr. Zarankow, *inter alia*, that she had been raped at the age of 12, after which she experienced a number of behavioral problems. *See* Record at 1174. She described her mood as extremely unstable, stating that at times she felt elated, had excessive energy, racing thoughts, and agitation, and could go without sleep for days, and at other times she felt depressed and slept excessively. *See id*. She reported a history of interpersonal conflicts and described herself as a mean, hostile person. *See id*.

*id*. at 1177.[5] The plaintiff was noted to have canceled an individual counseling session with a Lisa Turner scheduled for May 26, 2009, because of medical issues. *See id*. at 1178. No further progress notes are of record; however, the plaintiff testified at her June 24, 2009, hearing that she had commenced weekly counseling sessions with Turner. *See id*. at 29.

### 2. Administrative Law Judge's Decision

The administrative law judge deemed the plaintiff's mental impairment(s) non-severe, assessing them as imposing only mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace, with no episodes of decompensation. *See id*. at 10. In so doing, she reasoned that the record disclosed that the plaintiff had been diagnosed with anxiety and affective disorders that had only mild effects, citing the Anderson assessment and GAF rating and the opinion of Dr. Hadi. *See id*.[6]

> In a separate section of her opinion, pertaining to her RFC assessment, she also stated:
>
> The [plaintiff] has had very little recent psychiatric treatment. She was seen twice at Counseling Services, Inc., in May 2008 where she was evaluated by Beata Zarankow, M.D., and assessed with bipolar disorder and PTSD. The [plaintiff's] Seroquel was stopped and she was started on Risperdal. She was not seen there again until April 2009 when she received assistance with coping skills and some past, undocumented trauma. The [plaintiff] was evaluated by a licensed clinical social worker who provided fairly benign progress notes.

*Id*. at 12 (citations omitted).

---

[5] The plaintiff's symptoms at that time reportedly included "constantly moving, shaking, anxiety[,]" inability to fall asleep, sleeping during the day, becoming irritable easily, having a short fuse, and being impatient. *See* Record at 1179.

[6] As the plaintiff's counsel observed at oral argument, the administrative law judge mistakenly stated that Anderson assessed the plaintiff with a GAF score of 75. *See* Record at 10; *compare* Record at 1105. However, nothing turns on the misstatement.

7

### 3. Two Errors

The plaintiff identifies two principal problems with the administrative law judge's handling of the question of the severity of her mental impairments: that she (i) relied heavily on the opinion of Dr. Hadi, who did not have the benefit of review of later-submitted material evidence, including the notes and findings of Dr. Zarankow, and (ii) ignored Dr. Hadi's finding that the plaintiff had suffered one or two episodes of decompensation, a finding that in itself dictated a conclusion that her mental impairments were severe. *See* Statement of Errors at 3-8.

At oral argument, counsel for the commissioner rejoined that:

1. Reliance on the opinion of a DDS consultant who has not had the benefit of review of the full medical record is permissible, a proposition for which he cited *Vining v. Astrue*, 720 F. Supp.2d 126 (D. Me. 2010), and *Simpson v. Astrue*, Civil No. 09-399-P-H, 2010 WL 2595165 (D. Me. June 23, 2010) (rec. dec., *aff'd* July 22, 2010). He distinguished the case of *Alcantara v. Astrue*, 257 Fed. Appx. 333 (1st Cir. 2007), relied on by the plaintiff, *see* Statement of Errors at 5, on the basis that, in *Alcantara*, the state agency nonexamining reviewer upon whom the administrative law judge was held to have improperly relied had seen only one-third of the full medical record, *see Alcantara*, 257 Fed. Appx. at 334, whereas, in this case, Dr. Hadi reviewed 90 percent of it.

2. The administrative law judge supportably concluded that the evidence unseen by Dr. Hadi made no material difference, given that Dr. Zarankow had seen the plaintiff only twice and there was a significant gap in treatment thereafter. The commissioner's counsel added that Dr. Zarankow gave no indication of what functional limitations, if any, resulted from the plaintiff's mental impairment(s), and there is no basis to conclude that the condition in which Dr.

Zarankow found the plaintiff when she assessed a one-time GAF score of 48 persisted or was expected to persist for at least 12 months.

3. The plaintiff failed to identify how a finding that her mental impairments were severe would have affected the outcome of her case, a fatal defect at Step 2.

4. Any error in failing to address Dr. Hadi's finding of episodes of decompensation was harmless, given that Dr. Hadi himself stated that the plaintiff's mental impairments were non-severe, Dr. Hoch also found those impairments non-severe, and relevant regulations do not mandate a determination of severity at Step 2 when episodes of decompensation are found; rather, they indicate that a claimant's mental impairment(s) generally will be deemed severe in that circumstance. *See* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is non-severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities[.]").

The commissioner's counsel's well-articulated presentation has facial appeal. However, I conclude that the plaintiff has the better argument.

The teaching of the caselaw cited by both sides is that there is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental RFC. Factors to be considered include the completeness of the consultant's review of the full record, *see, e.g., Alcantara*, 257 Fed. Appx. at 334, and whether portions of the record unseen by the consultant reflect material change or are merely cumulative or consistent with the preexisting record and/or contain evidence supportably dismissed or minimized by the administrative law judge, *see, e.g., id.*; *Vining*, 720 F. Supp.2d at 133-34.

In this case, the evidence unseen by Dr. Hadi was indeed material. Dr. Zarankow supplied new diagnoses, of bipolar disorder and PTSD, and assessed the plaintiff with a GAF score significantly lower than that found by Anderson, a score indicative of serious impairment. Dr. Hadi had noted, *inter alia*, that there was limited evidence to support a bipolar diagnosis. *See* Record at 1114. One cannot be confident that, had he reviewed the later submitted evidence, his views would have been unchanged.

The administrative law judge did not adequately assess the impact of this later evidence. While she correctly noted the gap in treatment between the second visit to Dr. Zarankow and the visit to Simpson, she omitted even to mention Dr. Zarankow's GAF score and mischaracterized the Simpson evaluation as "fairly benign progress notes[.]" *Id*. at 12. In fact, the Simpson materials reflect a one-time, in-depth evaluation rather than "progress notes," *see id*. at 1179-1204, and the symptoms observed by or reported to Simpson, such as shaking, anxiety, inability to sleep, and having a short fuse, were consistent with those observed by or reported to Dr. Zarankow, *compare id*. at 1179 *with id*. at 1174, 1176, and cannot fairly be characterized as "benign."

The administrative law judge's omission to discuss Dr. Hadi's finding of episodes of decompensation despite purporting to adopt his assessment, *compare id*. at 10 *with id*. at 1114, constitutes further error. The plaintiff correctly notes that a finding of one or two episodes of decompensation removes a claimant's mental impairment(s) from the realm of the non-severe. The regulations make clear that an exception can be made to a default finding of *non-severity* when, despite ratings of mild in the first three functional areas and a finding of no episodes of decompensation, the evidence nonetheless indicates more than a minimal resultant limitation in a claimant's ability to work. *See* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). However, those

10

regulations cannot fairly be read to suggest that an exception can be made to a default finding of *severity* despite the existence of episodes of decompensation. *See, e.g., id.*; *see also, e.g., Dewald v. Astrue*, 590 F. Supp.2d 1184, 1206 (D.S.D. 2008) ("The regulations [20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1)] . . . clearly indicate that a non-severe finding is not proper when any of these functional areas are determined to be other than 'none' or 'mild' . . . or when episodes of decompensation are indicated in the fourth area."). These rules trump Dr. Hadi's own assessment of the plaintiff's mental impairments as "none severe." Record at 1114.[7]

The commissioner's final argument gives me more pause. The plaintiff did not explain how a Step 2 finding of severity of her mental impairments would affect the outcome of her case. *See* Statement of Errors at 3-8. Such a failure ordinarily is fatal. *See, e.g., Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.").

Nonetheless, this court made an exception to that rule in circumstances in which a claimant complained of an administrative law judge's failure to factor in, at Step 2 or later steps, a treating psychiatrist's diagnosis that he suffered from a schizoaffective disorder, which the psychiatrist stated rendered him unemployable. *See Gregoire v. Astrue*, Civil No. 09-246-B-W, 2010 WL 1946302, at *5-*6 (D. Me. May 12, 2010) (rec. dec., *aff'd* June 4, 2010). The court reasoned that, although the claimant had not demonstrated how the error would necessarily affect the outcome of her case, the treating psychiatrist found severe occupational problems, essentially supplying the missing information. *See id.* at *6. While Dr. Zarankow did not directly address

---

[7] While the administrative law judge's severity rating is consistent with that of Dr. Hoch, she did not purport to rely on his opinion, instead invoking that of Dr. Hadi. In any event, Dr. Hoch, as well, did not have the benefit of review of the later submitted Zarankow and Simpson materials.

11

the impact of the plaintiff's mental impairments on occupational functioning, she assessed a GAF score that is consistent with serious occupational impairment. I conclude, as in *Gregoire*, that "while the question is a close one, [the existence of this evidence] is enough to meet the plaintiff's Step 2 burden." *Id*.

On the basis of each of the two identified errors, reversal and remand are warranted for proper assessment on the full record of the severity of the plaintiff's mental impairment(s) and, should those impairment(s) be determined to have been severe prior to the plaintiff's date last insured and/or currently, continuation of the sequential evaluation process.

### B. Physical Impairments/Step 4 Determination

In assessing the plaintiff's physical RFC, the administrative law judge found no manipulative limitations (*i.e.*, restrictions on such functions as reaching, handling, fingering, and feeling). *See* Finding 5, Record at 10. While the record contained evidence supporting such a conclusion, *see, e.g., id*. at 1026 (physical RFC assessment of DDS nonexamining consultant J.H. Hall, M.D.), it also contained conflicting evidence in the form of Dr. Medina's opinion that the plaintiff was capable of performing fingering with both hands frequently, meaning one-third to two-thirds of the time. *See* Record at 1109. The administrative law judge ignored the Medina opinion. *See id*. at 12. As counsel for the commissioner conceded at oral argument, this was error. *See, e.g., Nguyen v. Chater,* 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.") (citations omitted).

Counsel for the commissioner nevertheless argued that the error was harmless in that (i) the plaintiff herself never alleged that she had any limitations in handling, reaching, or

fingering, thereby failing to raise the issue to the administrative law judge, and, (ii) in any event, the limitations, which Dr. Medina never explained, did not result from any medically determinable impairment and, hence, properly were ignored. *See, e.g., Blackmore ex rel. JS v. Astrue*, Civil No. 09-385-P-S, 2010 WL 2674594, at *3 (D. Me. June 29, 2010) (rec. dec., *aff'd* July 17, 2010) ("In the absence of a medically determinable impairment, a claimant's symptoms rightfully are ignored: No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms.") (citation and internal quotation marks omitted).

At oral argument, the plaintiff's counsel acknowledged that his client had not alleged reaching, handling, or fingering limitations. However, he surmised that Dr. Medina, an orthopedic surgeon, *see* Record at 1112, had assessed the limitations in question as a result of the plaintiff's recurrent problems with back pain, in particular her medically determinable impairment of thoracic disc herniation with pain.

Counsel for the commissioner conceded the plaintiff's point that a limitation to frequent fingering would preclude the performance of past relevant work as a data entry operator, which requires constant fingering. *See* Statement of Errors at 10-11.

The commissioner fails to make a persuasive case that Dr. Medina's manipulative restrictions have no bearing on a medically determinable impairment. The plaintiff was found to have a medically determinable orthopedic impairment, thoracic disc herniation with pain. It is hardly self-evident, on this record, that such an impairment cannot cause the restrictions found by Dr. Medina, an orthopedic surgeon.

13

The commissioner's second basis for finding harmless error presents a closer question. It is difficult to see how a claimant can raise as error a failure to consider an expert's finding of a restriction or symptom that the claimant herself never alleged she suffered. Nonetheless, the commissioner cites no authority for that proposition, and my research reveals none.

In the absence of such authority, I cannot conclude that the error in question is harmless, the administrative law judge having failed in her duty to resolve a conflict in the evidence that was material to her Step 4 finding of non-disability, and the court being ill-equipped to resolve such conflicts in the first instance. *See, e.g., Soto v. Secretary of Health & Human Servs.*, 795 F.2d 219, 222 (1st Cir. 1986) ("We are ill-equipped to sort out a record that admits of conflicting interpretations. Accordingly, we believe the case must be remanded. . . . The Secretary may take additional evidence on remand, and is not obliged to accept the results of claimant's IQ tests if there is a substantial basis for believing that claimant was feigning the results. If the Secretary does reject the test results on this basis, however, he should state his reasons for doing so.") (footnote omitted); *Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts.").

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum*

*and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 29th day of December, 2010.

<u>/s/ John H. Rich III</u>
John H. Rich III
United States Magistrate Judge